# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| SHOW PROS ENTERTAINMENT SERVICES OF CHARLOTTE, INC., <br><br>Plaintiff,<br><br>v.<br><br>PANTHERS STADIUM, LLC,<br><br>Defendant. | Case No. 3:23-cv-00212-MOC-SCR |

## PROTOCOL FOR DISCOVERY AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION

Plaintiff Show Pros Entertainment Services of Charlotte, Inc., and Defendant Panthers Stadium, LLC (collectively, the "Parties"), by and through their undersigned counsel, hereby stipulate to the following protocol for the discovery and production of electronically stored information in the above-captioned action (the "ESI Protocol"):

**A.    SCOPE**

    **1.    General.** This ESI Protocol shall govern the processes and procedures that govern the Parties' production of electronically stored information ("ESI"), as defined below, in the above-captioned action, unless the terms are modified in writing by the Parties or by Court order. To the extent that any third party produces ESI in this action, the Parties agree to request that any such third party abide by the terms of this ESI Protocol.

2. **Disputes.** The Parties shall meet and confer in good faith on any issue regarding ESI, as necessary, including any issues relating to custodians and data sources, whether they arise under this ESI Protocol or otherwise. In the event the Parties cannot reach an agreement on a disputed matter, the Parties may seek judicial intervention to resolve the dispute.

3. **Paper Discovery.** Each party responding to discovery requests has an independent and separate obligation to produce hard copy documents ("Paper Discovery") responsive to a receiving party's discovery requests, as noted below.

4. Nothing in this ESI Protocol alters a Party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure, Local Rules of the United States District Court for the Western District of North Carolina, this Court's Case Procedures (collectively, "Applicable Rules"), or any Court order, nor does anything in this ESI Protocol impose additional burdens beyond those imposed by the Applicable Rules or any Court order. The Parties reserve all objections relating to the production of ESI that are not specifically addressed in this ESI Protocol.

B. **DEFINITIONS**

1. "**Electronically stored information**" or "**ESI**" means and refers to computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB flash drives ("thumb" drives) or other real or virtualized devices or media.

2. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as it is used by the producing party in the usual course of its business and in its regularly conducted activities.

3. **"Media"** means and refers to an object or device, including but not limited to a disc, tape, computer, phone, drive, or other device, whether or not in the producing party's physical possession, on which data is or was stored.

## C. COST CONTAINMENT AND IDENTIFICATION OF RESPONSIVE MATERIAL

1. **Identification of ESI.** The Parties may identify ESI: (a) by identifying and selecting custodians most likely to possess relevant documents; and/or (b) by applying search terms to identifiable data repositories and custodian data sources. Each producing party may, at its election, review ESI for responsiveness and privilege prior to production to the receiving party.

2. **No Responsiveness Presumption.** The fact that a document is identified through one of the means described in Section C.1 above does not mean that such document is responsive to any propounded discovery request or otherwise relevant to the above-captioned action. The scope of documents to be produced shall be governed by this ESI Protocol, any propounded discovery request and the Parties' objections and responses to those discovery requests, and any separate written agreements that may be reached by the Parties.

3. **Email Threading.** The Parties may utilize email threading software where possible and economically feasible to help reduce the production and logging of duplicative email chains by identifying the most complete version of the chain and producing or logging only that version. If the most complete version of an email does not include an attachment referenced in a lesser included version, the lesser included version will be produced or logged as needed.

**4.     De-Duplication of Production.** The Parties may use reasonable, good faith efforts to avoid the production of Duplicate ESI. For Duplicate ESI, each Party need only produce a single copy of a responsive document or record provided that, the load file accompanying the production in question contains field(s) listing the custodian of each of the non-produced duplicates to the extent the input of this information can be incorporated through an automated process and does not incur burdensome expense.

**D.     PRODUCTION**

**1.     ESI Production Format.** For all discovery requests in which ESI is reasonably available and responsive to a discovery request, the producing party shall adhere to the following production format and procedure for ESI.

a.     **Image Format:** Black-and-white Group IV Single-Page TIFFs (300 DPI). Color images should be provided in .JPG format when color is necessary. Image file names should match the page (Bates) identifier for that specific image and end with the .tif (or .jpg if needed) extension.

b.     **Database Load Files:** Documents produced shall be provided with: (a) Standard Concordance delimited load file(s); and (b) Opticon delimited cross-reference file(s). Concordance load files shall contain the fields listed in paragraph D.2 below.

c.     **OCR/Extracted Text Format:** Document level text files named for the Bates number corresponding to the first page of the document. Do not include text in the load file. Text files should be in a directory named "TEXT."

d. **Natives:** Documents produced in native file format shall be labeled, to the extent practicable, by assigning a Bates number as the filename (e.g., ABC0000001.xls). The load file should contain a field called "NATIVE" with the path to the corresponding native file. Native files should be in a directory named "NATIVES."

   i. Excel spreadsheets and other files that cannot be imaged in a useful manner should be produced in native format to enable the parties to review those files. If there are non-printable files in the production set (mpg, wav, mdb, etc.), they should be produced as native files.

   ii. The Parties may seek supplemental production of native files for any produced images that are deemed unusable, unsearchable, or unduly burdensome.

e. **Bates Numbering:**

   i. All images must be assigned a Bates number that must always: (a) be unique across the entire document production; (b) maintain a constant length (0- padded) across the entire production; (c) contain no special characters or embedded spaces; and (d) be sequential within a given document.

   ii. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

   iii. The producing party will brand all TIFF images in the lower right hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

5

f. **Attachment Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing an e-mail with its attachments, the attachments should be processed in order behind the e-mail and the production load file should reflect this relationship in the BegProdAtt/EndProdAtt fields.

g. **Paper Documents:** If a party converts paper documents into electronic format, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

h. **Production Media/Transfer:** Productions should be produced on encrypted thumb drive or secure file transfer site.

2. **Metadata.** All metadata associated with ESI must be preserved, but the Parties need not produce all metadata associated with ESI, unless the requesting party demonstrates a good faith need for specific metadata. The Parties, however, shall produce a load file (.dat file) containing the following standard metadata fields to the extent they exist and to the extent such information is reasonably ascertainable and can be provided through reasonable means for the ESI being produced:

| Field | Description |
|---|---|
| BegProd | Bates number corresponding to the first page of the document. |
| EndProd | Bates number corresponding to the last page of the document. |
| BegProdAtt | Bates number corresponding to the first page of a document family. |
| EndProdAtt | Bates number corresponding to the last page of a document family. |
| PageCount | Number of pages/images for the document. |
| Custodian | Name of the person from where file is produced. |
| Author | The author of the document or Sender of Email |
| Recip | The recipient(s) of the document/Email. |
| CC | The individuals copied on the document/Email, if any. |
| BCC | The individuals blind copied on the Email, if any. |

| DocTitle | The title of a document or the subject of an email. |
| --- | --- |
| DocType | Type of document, such as Microsoft Word, Adobe Portable Document Format, Microsoft Excel. |
| Date Sent | The date an email was sent. |
| Time Sent | The time an email was sent. |
| Date Received | The date an email was received. |
| Time Received | The time an email was received. |
| Date Created | The date the file was created, if available. |
| Time Created | The time the file was created, if available. |
| Date Last Modified | The date the file was last modified, if available. |
| Time Last Modified | The time the file was last modified, if available. |
| Folder | The folder the document is stored in. |
| LastAuthor | Last Edited By |
| MD5Hash | MD5HASH of electronic files |
| TextPath | Path to the records' corresponding text file. Do not include actual text in load files. |
| Native | The file path that the corresponding production Native file resides in. |
| Parent Date | The date of the email populated for the email and its attachment. |
| Confidential[1] | The confidentiality designation branded on the document. |
| Redaction | Yes/No field that indicates whether a documents has been redacted. |

If a Party requires additional metadata, the Party may send a letter requesting the production of additional metadata on an individual basis by identifying each document or document type for which additional metadata is needed, specifying what kinds of additional metadata the Party requires, and the good faith reason why such metadata is needed. Any disagreements in this regard shall be resolved by the Court.

      **3.** **<u>Third-Party Software</u>.** To the extent ESI produced pursuant to this ESI Protocol cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such ESI. The Parties shall meet and confer to address such issues as may arise with respect to

---

[1] The confidentiality designation (i.e., "Confidential" or "Highly Confidential – Attorney's Eyes-Only"), if any, shall also be physically branded to each page of each document containing confidential information in accordance with the Consent Protective Order entered in this action.

Case 3:23-cv-00212-MOC-SCR Document 19 Filed 11/20/23 Page 7 of 10

obtaining access to any such software and operating manuals which are the property of a third party. Under no circumstances will a producing party be under any obligation to produce third-party software or proprietary manuals to the receiving party.

E.  MISCELLANEOUS

1.  **English Language.** To the extent any data exists in more than one language, the data shall be produced in English, if available. If no English version of a document is available, the producing party does not have an obligation to produce an English translation of a document.

2.  **Cooperation.** The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of ESI, including, but not limited to, database field definitions and structure or document delivery mechanisms.

3.  **Variance.** Any practice or procedure set forth herein may be varied by written agreement of the Parties.

F.  TIMING AND SEQUENCING OF ELECTRONIC DISCOVERY

1.  The parties shall meet and confer on ESI in good faith and any unresolved dispute regarding the production of ESI may be brought to the Court for resolution by either Party in accordance with the Applicable Rules, or any Court order.

2.  Any Party under an obligation to produce ESI shall commence the production of such ESI and proceed with the production of the ESI in a timely manner consistent with a schedule agreed upon by the Parties and/or any orders of the Court.

G.  OBJECTIONS TO ESI PRODUCTION

If either Party objects to producing the requested ESI on the grounds that such information is not reasonably accessible, or because production in the requested format is asserted to be not

reasonably accessible, the Party, at or before the time the production is due under the Applicable Rules or any orders of the Court, shall describe the nature of the objection with reasonable particularity and indicate whether the producing party is willing to offer an alternative. The Parties will meet and confer in an attempt to resolve the objections if necessary.

**H.     PAPER DISCOVERY**

Nothing in this ESI Protocol is intended to interfere with, preclude, alter or otherwise affect the Parties' independent obligations to engage in and produce Paper Discovery. All Paper Documents shall be produced as single-page TIFF images as outlined in Section D.1 above.

**I.     DOCUMENTS PROTECTED FROM DISCOVERY**

**1.**     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privilege or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

**2.**     The parties agree to meet and confer regarding the scope and contents of privilege logs.

**3.**     Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

**SO ORDERED**.     Signed: November 20, 2023

_____
Susan C. Rodriguez
United States Magistrate Judge

9

WE SO MOVE and agree to abide by this Protocol, this the 16TH day of November, 2023:

**Attorneys for Plaintiff**

/s/ R. Jeremy Sugg
Sara R. Lincoln (N.C. Bar No. 22744)
R. Jeremy Sugg (N.C. Bar No. 40351)
Lincoln Derr PLLC
4350 Congress Street, Suite 575
Charlotte, North Carolina 28209
sara.lincoln@lincolnderr.com
jeremy.sugg@lincolnderr.com


**Attorneys for Defendant**

/s/ Joseph M. Piligian
Scott M. Tyler (N.C. Bar No. 23300)
Joseph M. Piligian (N.C. Bar No. 57533)
MOORE & VAN ALLEN PLLC
100 N. Tryon Street, Suite 4700
Charlotte, NC  28202-4003
Telephone:  (704) 331-1000
Facsimile:  (704) 331-1159
scotttyler@mvalaw.com
joepiligian@mvalaw.com